## SUPREME COURT.

### Mary C. Best agt. Benjamin Bauder.

Wine roots or wine plants, which are offered for sale by one traveling from place to place, are included in the terms " goods, or other commodities," within the meaning of section 64, subdivision 27, in the U. S. internal revenue laws.

Those laws contain a direct prohibition against being engaged in prosecuting or carrying on the occupation of a pedler without a license; and the circumstance that the prohibition is for *revenue purposes only*, is of no consequence, for in such case, as well as in every other, a sale in violation of the prohibition is illegal and void, and no action can be maintained upon it for the purchase price of the article sold.

A penalty implies a prohibition, though there are no prohibitory words in the statute.

*Otsego Special Term, June,* 1865.

THE plaintiff brought this suit to recover for the purchase price of three hundred wine roots or plants, sold and delivered to the defendant on the 10th day of November, 1863. The defendant for his first defence alleged that the plaintiff in making the sale and agreement was engaged in the occupation of a pedler without license, as required by the revenue laws of the United States, to which the plaintiff demurred, on the ground that such facts were no defence to an action for the price.

J. H. SALISBURY, *for plaintiff.*

J. E. DEWEY, *for defendant.*

PARKER, J. This action is brought to recover for three hundred wine roots or plants, sold and delivered by the plaintiff to the defendant, on the 10th day of November, 1863. The defendant sets up in his answer as a defence, that at the time of the sale set forth in the complaint, the plaintiff was engaged in the business of pedling, and selling and delivering, while traveling from house to house, and from place to place, through different parts of this state, certain articles represented by her to be wine roots or plants, which the plaintiff conveyed from place to place, as aforesaid, in a wagon drawn by two horses, and sold and delivered the same in divers quantities, to divers persons, and among others, to the defendant, to the number of three hundred, being the same three hundred wine roots or plants mentioned in the complaint—although the plaintiff had neither applied or paid for, nor in any manner obtained or received any license whatever as a dealer or pedler, or otherwise, from any officer or officers of the United States, or the government thereof, and although no license whatever had been granted or issued to her under any act of Congress—and such agreement and sale referred to in this complaint, was in violation of and contrary to the act

of congress entitled, " an act to provide internal revenue and pay interest on the public debt," approved July 1, 1862, and the act or acts amending the same, or supplementary thereto, and was prohibited thereby and void.

To this answer the plaintiff demurred, on the ground that it does not state facts sufficient to constitute a defence. The act of congress referred to in the answer, provides, " that from and after the first day of August, 1862, no person, association of persons, or corporation, shall be engaged in, prosecute, or carry on, either of the trades or occupations mentioned in section 64 of this act, until he or they shall have obtained a license therefor, in the manner hereinafter provided " (§ 57). By section 64, subdivision 27, pedlers, when traveling with two horses, shall pay $15 for each license, and " any person (except persons pedling newspapers, bibles, or religious tracts) who sells or offers to sell at retail, goods, wares, or other commodities; traveling from place to place, in the street, or through different parts of the country, shall be regarded a pedler under this act." By section 59, it is provided, " that if any person or persons shall exercise or carry on any trade or business hereinafter mentioned, for the exercising or carrying on of which trade or business a license is required by this act, without taking out such license as in that behalf required, he, she or they, shall, for every such offence, respectively, forfeit a penalty equal to three times the amount of the duty or sum of money imposed for such license." And by section 24, of the act to amend the revenue law, approved March 3, 1863, " he, she, or they, shall, for every such offence, upon conviction thereof, in lieu of, or in addition to other penalties now imposed by law, at the discretion of the court, be subject to imprisonment for a term not exceeding two years."

If wine plants are either " goods, wares or commodities," the plaintiff was a pedler within the meaning of the act, and the sale of the plants by her to the defendant, was

made while prosecuting that occupation. This is alleged in the answer, and admitted by the demurrer. These plants, if not "goods," which I think they are, certainly are included in the term "commodities." The productions of a country which become an article of sale, or in the language of Webster, in his dictionary, "in commerce including everything movable that is bought and sold,   *   *   * unless perhaps animals may be excepted. The word includes all the movables which are the objects of commerce." If any exception is to be made, as claimed by the plaintiff's counsel, in favor of the farmer who takes the products of his farm to market, and sells them from house to house—if he is not a pedler—this case is not within the exception, for it does not appear that these plants were raised by the plaintiff. I have no doubt that a license was required to authorize the plaintiff to prosecute the business of selling these plants as she was selling when she made the sale to the defendant.

It is insisted, however, by the plaintiff's counsel, that inasmuch as the act was passed merely for the purpose of revenue, and the penalty was annexed only to secure the payment of the license duty, the sale in question was not so in violation of the act as to render it void. Notwithstanding the "courts appear occasionally to have strained a point" in favor of such a distinction, as was said in *Bell* agt. *Quinn* (2 *Sandf.* 146, 150), and intimated in *Griffith* agt. *Wells* (3 *Denio*, 227), the question, after all, I apprehend is, does the statute prohibit the sale without a license? If it does, the circumstance that it is prohibited for revenue purposes, is of no consequence, for in such case, as well as in every other, the sale in violation of the prohibition is illegal and void, and no action can be maintained upon it. (*Cope* agt. *Rowland*, 2 *Mees. & Welsb.* 149; *Smith* agt. *Mawbood*, 14 *Mees. & Welsb.* 452; *Brown's Legal Max.* 580; 2 *Parsons on Cont.* 259; *Story on Cont.* 620.).

In looking at the statute we find a direct prohibition

against selling as a pedler without a license. By section 57, no person shall be engaged in either of the occupations mentioned in section 64, without a license. Section 64 describes the occupation of a pedler, and fixes the price of the license for such occupation. Irrespective of the penalty, a pedler is, then, prohibited from selling his goods or commodities without a license. Besides, a penalty implies a prohibition, though there are no prohibitory words in the statute. (*Story on Cont.* § 614; 1 *Taunt.* 136; 10 *Bing.* 110; 1 *Parsons on Cont.* 381; 3 *Denio*, 226.) If then, the contract of sale was in violation of the statute, no action can be sustained upon it. (26 *Barb.* 595; *Broom's Legal Max.* 576; 16 *N. Y. R.* 512; 17 *Barb.* 397.)

I am of the opinion that the demurrer is not well taken, and should be overruled with costs, with liberty to the plaintiff to take issue upon the facts of the answer, and go to trial thereon, upon payment of costs of the demurrer within twenty days after notice of the order to be entered herein.